# White's Appeal.

Where a wife executed a mortgage and delivered it to a creditor of her husband, for the purpose of raising money to pay his debts, including that of the creditor in question; and the instrument came back fairly into her possession, without such object having been accomplished, and was destroyed; it was *held*, that the creditor had acquired thereby no interest in the wife's property, and that a court of equity would not assist him in subjecting it to his debt.

Such a transaction did not confer upon the creditor a power coupled with an interest, to effect which there must be an estate in the thing granted.

A court of equity will not enforce a gratuitous undertaking on the part of a wife to subject her separate estate to the payment of her husband's debts. In such case, the legal title will not be allowed to prevail in a court of equity, over the equitable right; it is only where the equities are equal that the law prevails.

The report of an auditor upon the facts is conclusive, unless plain mistake be shown.

APPEAL from the Orphans' Court of *Philadelphia*.

This was an appeal by A. M. & R. White from the decree of the court below on the distribution of the residuary estate of Dr. Peter Shoenberger. The decree appealed from was the same referred to in Lytle's Appeal, *supra* 131.

On the 11th June 1856, Edward H. Lytle was indebted to A. M. & R. White in the sum of about $7000; and on the same day, he executed in their favour his judgment-note for $11,000, which they agreed in writing was given as collateral security for their four notes of $2500 advanced to Lytle on that day. It was also agreed, that if A. M. & R. White should be obliged to pay any of these notes, they should be at liberty to issue execution for the amount paid with five per cent. advance; and that if judgment should be obtained by the executors of Dr. Shoenberger, in a suit then pending against Mr. Lytle, before the maturity of the notes, then the Messrs. White should be at liberty to issue execution forthwith for their own protection.

After this, negotiations were undertaken, through Thomas E. Franklin, Esq., for raising a sum of money on a mortgage of Mrs. Lytle's interest on the residuary estate of her father, Dr. Peter Shoenberger, for the purpose of relieving Mr. Lytle from his

pecuniary embarrassments. To effect this object, a mortgage for $30,000 was executed, by Edward H. Lytle and wife to A. M. White; but this amount being deemed too small for the purpose, three bonds for $20,000 each were subsequently executed by them, together with a mortgage and assignment of Mrs. Lytle's interest in her father's residuary estate, to secure their payment.

These three bonds, and the mortgage and assignment, were placed in the hands of A. M. White, for negotiation, on the best terms he could obtain, with the understanding that the proceeds should be applied, first, to the payment of $11,000 of notes for which Gen. Wilson was responsible; secondly, to the discharge of a mortgage for $15,000, held by The Lancaster Savings Institution against property of Mr. Lytle; thirdly, to the payment of the notes held by A. M. & R. White, which amounted to $17,750; and the balance, if any, for the use of Mr. Lytle himself.

Efforts were made in various quarters to obtain money on these securities, without success; and the papers were left in the possession of the house of John K. Reed & Co., bankers, to whom an application had been made to advance the money; and by them they were delivered up to the counsel of Mr. and Mrs. Lytle, on the 3d September 1856, who handed them to Mr. Lytle, and they were subsequently destroyed.

The date of the bonds and mortgage did not appear; but it must have been in July or August 1856, as on the 27th August notice of the assignment was given to the executors of Dr. Shoenberger. Mr. A. M. White was informed that the papers had been delivered to Mrs. Lytle's counsel, and made no objection to it; and an attempt was afterwards made by Mr. and Mrs. Lytle to secure the Whites in part, by assigning to them a judgment obtained by The Reliance Transportation Company against Bernard O'Friel for about $8500, which had been marked to the use of Dr. Shoenberger, and by a request to the executors to credit this amount to Mrs. Lytle in distribution. The executors refused to do so, because Mrs. Lytle had already made an assignment of her share of the residue to secure Gen. Wilson, and the amount of the residue had not been ascertained.

No execution was ever issued on the judgment for $11,000 given to A. M. & R. White; and any recovery upon it, so far as personal property was concerned, was defeated by a general assignment executed by Edward H. Lytle for the benefit of his creditors, on the 6th September 1856.

Before the auditor appointed to report distribution of the residuary estate in the hands of the executors, A. M. & R. White presented their claim for $17,750 and interest, contending that the mortgage and assignment were designed as a security, in part, for their use absolutely; and that even if A. M. White were to be

regarded as a mere agent for the negotiation of a loan, still that having an interest in the execution of his power, it was irrevocable.

The auditor reported against the claim of A. M. & R. White, and his report having been confirmed by the court below, this appeal was taken by them.

*S. S. Blair* and *W. D. Kelley*, for the appellants.—The distinction set up by the auditor between the case of an interest in the security itself, and an interest in its proceeds, is purely speculative, and has never found a place except in discussions relating to revocations by *death ;* and it may be added, that when the legal title to the security is given to the agent in his own name, as is the case here, it cannot be revoked even by the death of the principal: *Story on Agency*, § 477. In the case of Hunt *v.* Rousmanier, 8 *Wheat.* 174, the point was fully considered, and it was held, that where one gave a power of attorney to a creditor to sell his interest in a vessel with power to apply the proceeds to the payment of the debt, and to return the surplus to the principal, it was a perfectly good security to the creditor during the lifetime of the debtor, and one which he could not revoke by any act of his own ; but inasmuch as there was no transfer of the title to the vessel to the agent himself, by reason whereof, he could only execute the power in the name of his principal, its efficacy as a security was not retained after the death of the principal. It was not "a power coupled with an interest," because the legal estate was not transferred to the agent so as to enable him to effectuate the security in his own name. The assignments in this case were to Mr. White himself, and he could have passed the title without using the name of Mrs. Lytle. His title was perfect, so that even the death of Mrs. Lytle could not have avoided it, and much less can any act of her husband and herself render it inoperative.

Where an authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is a part security, then, unless there is an express stipulation that it shall be revocable, it is, from its own nature and character, in contemplation of law, irrevocable: *Story's Agency* 477; Wheeler *v.* Slocumb, 16 *Pick.* 52. A power of attorney to sell land given to a creditor to pay his debts out of the proceeds of sale is irrevocable: Gaussen *v.* Morton, 10 *Barn. & Cr.* 731.

The auditor decides the case entirely upon the ground that according to his view of the contract of the parties, White would be entitled to nothing unless the whole three of the assignments should be negotiated; and as there was a failure to raise the money on the securities, he has now no claim upon the fund. But granting his view of the fact to be correct (which we deny), the question arises, was there in legal contemplation a failure to

negotiate the securities. The report shows that Mr. and Mrs. Lytle *prevented* the sale of the securities, by taking back the papers after delivery without the consent of White; and it is a cardinal rule, that the prevention of the performance of a condition precedent is equivalent to performance: Smyth *v.* Craig, 3 *W. & S.* 19.

*B. H. Brewster*, for the appellee.—Had Mr. White an interest coupled with his power to negotiate, such as would render the power irrevocable? We contend that he had not.

Mr. White was an agent to negotiate a loan, to raise money to relieve Mr. Lytle from embarrassment, and not to provide security for any particular person or persons. It was for this purpose, and this purpose only, that Mrs. Lytle consented to sacrifice her property to so great an extent. This view is taken by the auditor and sanctioned by the testimony. If the negotiation had proved successful, and money had been raised on the bonds, Mr. White could not in the first instance have applied it to his claim against Lytle, but was obliged to appropriate the proceeds to the payment of other debts,—first to pay Wilson's claim, and secondly to take up the mortgage held by Reed & Co. If he had succeeded in negotiating only one of the bonds (and they were divided only to facilitate the object contemplated), he could not have applied the proceeds to his claim. This is conclusive against any presumption that he had any special property or interest in the bonds or any of them. His interest was altogether contingent, and dependent first on his success, and secondly on the amount raised. He failed however in the negotiation. The contingency never happened upon which his interest was to vest. The papers were not withdrawn until after all hopes of negotiation had passed.

Mr. White had no power coupled with an interest. He was not an agent holding an interest in the security itself. There was no consideration given by him. No interest whatever was given to Mr. White in the subject upon which the power was to be exercised; his interest, whatever it was, attached to the proceeds—to that which was to be produced by the exercise of the power. The power and the interest in this case were not united—coupled. The power was therefore revocable: Hunt *v.* Rousmanier, 8 *Wheat. R.* 174; *Story on Agency*, § 477.

The appellants have ignored a well fixed principle of law—that the finding of the auditor upon the facts is like a jury's, final and conclusive, and not to be called in question except in case of a palpable mistake: Mengas's Appeal, 7 *Harris* 221; Harland's Accounts, 5 *Rawle* 323; Stehman's Appeal, 5 *Barr* 413; Loomis's Appeal, 10 *Harris* 312; Quain's Appeal, 10 *Harris* 510; Whiteside's Appeal, 11 *Harris* 114; Mellon's Appeal, 8 *Casey* 121; Landis *v.* Scott, 8 *Casey* 495; Miller's Appeals, 6 *Casey* 478.

The opinion of the court was delivered by

THOMPSON, J.—After much investigation of the subject-matter of this appeal, the auditor came to the conclusion that the instruments of writing under which the appellants claim, were not executed to convey an absolute interest in Dr. Shoenberger's estate, or as securities for a pre-existing indebtedness, but were simply made to assume the form they did, for the purpose of being negotiated to raise money on a loan for Mr. Lytle. We need not restate the evidence minutely : suffice it to say, that there was evidence which the auditor thought satisfactorily established, that the negotiation of a loan had been in contemplation by Mr. Lytle to be applied principally to the extinguishment of his indebtedness prior to the execution of the bonds and mortgages in question, and for that purpose a mortgage and assignment of Mrs. Lytle's residuary interest in her father's estate, to secure three bonds for the sum of $30,000 to Alexander M. White, had been executed by Lytle and wife; that the amount not being deemed large enough to cover the objects intended, the three bonds aggregating $60,000 involved in this controversy, secured by three instruments for the like amounts, framed to operate as mortgages as well as assignments of Mrs. Lytle's residuary interest in her father's estate, were executed by Lytle and wife to A. M. & R. White; that they were intended and delivered to the Messrs. Whites, under an understanding and agreement, that they were to be negotiated to raise a loan for Lytle, and that *in the event* of their being so negotiated, their firm was to be paid the amount of their indebtedness after the payment, first to other parties the amount of $26,000 ; that the Messrs. Whites, together with Lytle and Mr. Slaymaker, made ineffectual efforts to negotiate the securities, and wholly failed to do so ; that after the failure of the last effort for the above purpose, Mr. Lytle claimed a return of the papers from J. K. Reed & Co., bankers, who declined to advance money, but were finally given up by them to the counsel of Mrs. Lytle ; that when Mr. White, into whose hands the papers had been placed for negotiation, was informed of the intention of Mrs. Lytle's counsel to give them up to Mr. Lytle, or that they had been given, he assented thereto, and made no objection that he had an interest in them, or that he meditated further efforts at negotiation ; that they were delivered up to the grantors, and by them destroyed ; that afterwards, and after Mr. Lytle's assignment for the benefit of creditors, White declared his firm had no security for their debt, and endeavoured to get Mrs. Lytle to secure the firm, and solicited and procured the assignment of the O'Freil judgment, which may still be a security for a large amount. From such evidence, the auditor inferred the nature of the transaction to be a scheme for raising money on loan for the benefit of Mr. Lytle, and not a conveyance of Mrs. Lytle's interest in her father's estate, nor

an absolute pledge of it as a security for past indebtedness.  We have very carefully considered the auditor's report, and measured it by the evidence, and it seems to us, that he committed no error in his finding as to the character of the transaction.  That the Messrs. Whites considered it in the same light, is certainly deducible from their acts after they were apprised that the papers were returned to Lytle and wife, which facts are found to be proved by the auditor.  They acted as if the meditated project of a loan had failed, and that the matter, so far as that was concerned, was ended, and they no further interested in the papers.  These acts were strong corroborative evidence of the original understanding and purpose of the bonds and assignments.  The auditor's finding of facts from the testimony is always conclusive, unless plain mistake be shown, or as it is sometimes said, " palpable or flagrant error" exists : 7 *Harris* 221 ; 8 *Casey* 121–425 ; 6 *Id.* 478.  We are not able to convict the auditor of any error in his dealing with the facts.

These conclusions arrived at, it necessarily follows that the main ground of claim on the part of the appellants in this controversy fails, namely, that the Messrs. Whites, by virtue of the mortgage-assignments, held a power coupled with an interest which was not revocable without their assent and without consideration, and that a chancellor would decree a return or re-execution of the securities to them, and that the Orphans' Court should treat them as still existing.  Thus failing, they are not entitled to the distribution claimed.  The ascertained purpose of the transaction, notwithstanding the form of it, is widely different from that of a power coupled with an interest.  Such an interest, it was said by C. J. MARSHALL, in Hunt *v.* Rousmanier, 8 *Wheat.*, must be an estate or interest in the thing granted.  Other authorities say, an interest in the proceeds of the power : 16 *Pick.* 52 ; *Story on Agency* 477 ; 10 *B. & C.* 731.

But conceding that, at law, the legal title being in the appellants, the inference would be, that it was a power coupled with an interest ; what would be the condition of the case on the part of the appellants, if, resorting to a bill in equity to compel a re-execution or redelivery of the bonds and mortgages by Lytle and wife on the ground of interest coupled with the power, it should appear, that the grant by the wife of her estate was a purely gratuitous effort on her part to aid her husband in his embarrassments ; that it was to meet pre-existing debts ; that no present consideration passed to her or her husband for the act ; that no securities were surrendered at the time, nor postponement, delay, or injury occasioned to the creditor on account of it ; and that the wife had become repossessed of the securities so executed, without any fraud or other wrongful act, before innocent parties became interested in them ?  Could anybody doubt the refusal of

[White's Appeal.]

a chancellor to decree a re-execution of the instruments under such circumstances? Such seems to be exactly the state of facts in the case in hand. It is, in this aspect, the case of a legal title in one without any act or consideration to constitute an equity, as against the wife whose interests are to be affected; and a complete equitable right in the other. In equity, the legal title would not be allowed to prevail over the equitable right. It is only when the equities are equal that the law prevails. We think, therefore, that even without the direct evidence of the terms upon which the instruments were executed, but which we think decisive of this controversy, yet the want of all present consideration to the husband and wife for the transfer of the wife's estate appearing in the case; equity would not interfere to restore the securities thus obtained from the wife; nor should the Orphans' Court, in practice a court of chancery, have done otherwise than refuse to distribute the testator's estate without regard to the claim on account of the securities by the Messrs. Whites. Indeed, it seems very apparent, that, with proper diligence, they might have been perfectly secure. Their Sharon mortgage, it appears from the testimony, they surrendered long before this transaction, and they omitted to secure themselves under their $11,000 judgment. But these considerations have little to do with the determination of this issue; they only raise the inference, that these creditors trusted too implicitly to an influence which should induce a wife to surrender her paternal estate for their benefit. As we see no error in the decree of the Orphans' Court confirming the report of the auditor, it is

Affirmed at the costs of the appellant.