490     WEIGLE et al., Appellants, *v.* MERCER.

Syllabus—Opinion of Court below.     [1 Super. Ct.

# John Weigle, Peter Snyder, Jere Morret and Martin Berkheimer, Appellants, *v.* H. H. Mercer.

*Married woman—Contract of suretyship not enforceable in equity.*

The act of June 8, 1893, P. L. 345, expressly provides that a married woman cannot make herself liable as a surety.

Where a contract entered into by a married woman is, in effect, one of suretyship, equity will not lend its aid in an effort to make such an agreement fruitful, no matter how many steps she may have taken in the transaction.

*Equity looks for the real meaning of every transaction.*

Equity looks at the real meaning of every transaction and is not deceived by words, phrases or forms, and therefore it cannot be invoked in aid of an effort specifically enforcing against a married woman an agreement, which, stripped of all verbiage, presents but a contract of suretyship improvidently made and utterly devoid of consideration.

Argued March 11, 1896. Appeal, No. 7, March T., 1896, by plaintiffs from definite decree of C. P. Cumberland Co., Feb. T., 1894, No. 6, dismissing bill in equity. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLDAY and SMITH, JJ. Affirmed.

Bill in equity to enforce an agreement assigning a judgment held by a married woman against her husband.

The case came up on bill, answer and report of referee. The referee reported against the prayers of the bill, exceptions were filed to the report of the referee which were dismissed by the court below in the following opinion filed by EDWARD W. BIDDLE, P. J.

The plaintiffs are not entitled to recover in this action for two reasons:

1. Because, as expressed in the agreement of July 25, 1892, Mrs. Heagy assigned to John Weigle a portion of the judgment which she held against her husband, E. G. Heagy, merely to "indemnify him (Weigle) against loss by reason of being surety on certain notes of the said E. G. Heagy owing to sundry persons." In pursuance of their mutual understanding to this effect, Weigle purchased E. G. Heagy's goods at sheriff's sale on July 25, 1892, and upon the same day stipulated in

writing that the said goods. "shall be held solely as collateral security by him, by reason of his suretyship aforesaid." As Weigle never had possession of the goods for an instant, but Mrs. Heagy had them in her possession from the date of the sheriff's sale to March 8, 1893, when they were sold by private vendue as her property, the plaintiffs meet with an insuperable obstacle in the proviso to section 2 of the married persons' property act, approved June 3, 1887, which enacts "that nothing in this or the preceding section shall enable a married woman to become accommodation endorser, guarantor or surety for another." This proviso with a slight change is incorporated in the act of June 8, 1893, and under its terms the assignment of a portion of a judgment by Mrs. Heagy to John Weigle "to indemnify him against loss" was nugatory and void. It is needless to discuss further this aspect of the case.

2. The plaintiffs are not entitled to recover because there was no consideration for the assignment of the judgment to Weigle. The personal representative of Mrs. Heagy has possession of the fund which was realized by the public vendue of the goods in question, and the purpose of the present action is to obtain that fund from him on the strength of an assignment for which there was absolutely no consideration. The principle is settled that equity will not lend its aid to accomplish the result sought.

And now October 14, 1895, the exceptions to the report of the referee are not sustained, and the bill is dismissed at the costs of the plaintiffs.

*Errors assigned* were, (1) dismissing exceptions to referee's report alleging error in his findings of fact, and (2) dismissing the bill.

*S. M. Leidich, J. W. Wetzel* with him, for appellants.—A married woman may, with consent of her husband, assign her personal property: Dando's Appeal, 94 Pa. 76; prior to the act of 1848 a married woman might sell or give, when accompanied by a transfer of possession, her personal estate to her husband or a stranger: Dando's Appeal, 94 Pa. 76; Tower v. Hagner, 3 Whart. 57; Naglee v. Ingersoll, 7 Pa. 185; Hinney v. Phillips, 50 Pa. 382. This was not changed by the act of

492        WEIGLE et al., Appellants, *v.* MERCER.

Arguments—Opinion of the Court.        [1 Super. Ct.

1848: Ibid., 50 Pa. 382; Haffey v. Casey, 73 Pa. 431; her assignment of personal property is good without an acknowledgment: Bond v. Bunting, 78 Pa., 210; Fryer v. Rishell, 84 Pa., 521; Kulp v. Brant, 162 Pa. 222; Bowers' Appeal, 94 Pa., 362. The act of 1887 is an enabling act: Adams v. Gray, 154 P. S. 259. Therefore in law her assignment to Weigle was an executed contract and she is bound by it. This transaction is an executed contract: Patrick & Co. v. Smith, 165 Pa. 527.

*F. E. Beltzhoover,* for appellee.—It is undoubtedly true that a married woman may mortgage her property for the debt of her husband or of a stranger: Lytle's App., 36 Pa. 131; Haffey v. Carey, 73 Pa. 431; Brown's App., 94 Pa. 367; and she may pledge her personal property for a similar purpose, when possession and control of said property are given to the pledgee, Dando's App., 94 Pa. 76; and she may make an absolute gift of her property to her husband or a stranger: Bond v. Bunting, 78 Pa. 210.

There is no case where a court of equity has lent its aid to enforce such a gift or contract, but in several instances it has distinctly refused to so interfere: White's App., 36 Pa. 134; Baylor v. Commonwealth, 40 Pa. 37.

The courts have not only refused to enforce such a contract against a married woman, but will also interfere to protect her from the result of her action, when in effect if not in form she becomes surety for another's debt: Real Estate Co. v. Roop, 132 Pa. 496; Patrick & Co. v. Smith, 165 Pa. 526.

OPINION BY WICKHAM, J., April 13, 1896:

Hannah J. Heagy, wife of E. G. Heagy, on June 14, 1887, entered a judgment against her husband for the sum of $1,162. The judgment was based on a note given to her by him in 1882, to secure an admittedly honest debt. After the year 1887, the husband became indebted to other parties to the amount of $800, or more. John Weigle was liable as surety for most of the latter indebtedness.

On July 1, 1892, Mrs. Heagy caused an execution to be issued on her judgment and a levy to be made on all of her husband's personal property. He owned no real estate. On

July 20, 1892, she assigned to Weigle $900 of her judgment in pursuance of a parol agreement, afterwards put in .writing, a copy of which is as follows :

" This agreement made this 25th day of July, 1892, between John Weigle, of Upper Allen township, Cumberland county, Pennsylvania, of the one part, and Hannah J. Heagy, of Lower Allen township, said county, and said state, of the other part, witnesseth : That in consideration of the assignment of nine hundred dollars of the judgment of Hannah J. Heagy against E. G. Heagy, to the said John Weigle, to indemnify him against loss by reason of being surety on certain notes of the said E. G. Heagy, owing to sundry persons, the said John Weigle hereby agrees to purchase personal propery at the sheriff's sale held on the 25th day of July, 1892, to the value of the said sum of nine hundred dollars, and to hold the same in trust for the said Hannah J. Heagy, so that it may be used by her in the operation of the farm upon which she and her husband, the said E. G. Heagy, now reside, and it is further agreed that when the said notes are paid by any means whatsoever, then the said Weigle is to transfer all the goods remaining in his hands to the said Hannah J. Heagy for her sole use.   It is further agreed that the said Hannah J. Heagy shall have the right to sell all the grain which said Weigle may purchase at such market prices as may be paid at the time of sale.   Also all the corn and potatoes in the same manner and all such stock or goods for which she may have no use with the advice and consent of said Weigle.   The proceeds of said sale to be used, after deducting costs of living, etc. of the family of said Hannah J. Heagy for and towards paying off the said notes.   It is further understood and agreed that the said goods so purchased by the said Weigle shall be held solely as collateral security by him, by reason of his suretyship aforesaid, and shall not be used by him towards the payment of his own personal debts nor be subject to any creditors except those who hold him as surety for debts owing by the said E. G. Heagy.

Witness our hands and seals the day and year aforesaid :

" Witness :—                         JOHN WEIGLE
    " H. H. MERCER                   HANNAH J. HEAGY."

At the sheriff's sale Heagy's property realized $957.45.

Weigle bid in goods to the value of $863 and receipted to the sheriff, on the writ, for that amount. He paid nothing whatsoever out of his own pocket. The goods were left, as required by the contract, in the hands of Mrs. Heagy, who thereafter used and dealt with them as her own. She ignored any rights Weigle might have had under the agreement, sold some of the property without consulting him, or accounting to him for the proceeds of the sales, and finally in defiance of his wishes and protests advertised for sale, at auction, all that was left. A few days before the date fixed for this sale, she died, having first made her will, in which she provides, inter alia, as follows: " First, I direct that all my just debts and funeral expenses to be paid by my executor hereinafter named as soon after my decease as conveniently can be done.

" Second, I direct that all my personal property shall be sold excepting household furniture and goods to be selected by my husband, should he survive me, to furnish a house for himself and children unmarried, one horse, one buggy, and one spring wagon, and the proceeds of said sale, after the payment of the debts of my husband as agreed upon between myself and John Weigle, shall be invested by my Executor in real estate for a home for my husband and children . . . ."

H. H. Mercer, the appellant here, was named as executor, and as such he conducted the sale, already announced, obtaining for the property claimed by Weigle the sum of $721.47, which amount the latter unsuccessfully tried to recover in the court below.

The trouble with the appellant's claim is that it lacks the elements which appeal to a chancellor's conscience. He asks a court of equity to aid him in specifically enforcing against a married woman a contract of suretyship improvidently made and utterly devoid of consideration. It is one thing to refuse to aid a feme covert who has fully parted with the possession of goods and chattels or absolutely assigned a judgment or chose in action as a pledge or security for another's debts; it is quite a different matter to compel her to do any of these things in whole or in part. No matter how many steps she may have taken in a transaction such as has just been suggested, equity will not lend any assistance towards its final consummation. He who, without fraud, gets something for nothing is often

allowed to retain it, but a court of equity will not help any one to perfect an inchoate proceeding or scheme which will result in his obtaining the property of another without consideration.

Equity looks at the real meaning of every transaction, and is not deceived by words, phrases, or forms. Applying this test to the case in hand, what do we discover? A wife, having a valid judgment against her husband for $1,162, had within her grasp, by virtue of a levy made on an execution issued on the judgment, property worth at least $957. Without a shadow of a consideration, she agreed with one, who is surety for her husband for antecedent debts, to hold $900 worth of the property that might be bought in on her execution, the purpose of holding the same being in part to benefit herself, and in part to make the surety safe, as against possible or probable future loss, resulting from his suretyship. To effectuate the first purpose in view, that is, to place in the wife's hands the property on which, when acquired, the agreement was to operate, she assigned to the surety $900 of her judgment, so that he might bid at the sale. He bought in $863 worth of goods, which were turned over by the sheriff to the wife, and thereafter remained in her exclusive possession, as contemplated by the agreement.

At this stage of the arrangement, we find the wife in full possession of the property, which virtually had been paid for with her own money, and the husband's surety asserting an interest in the property through an executory contract without consideration or merit, and which no chancellor would for a moment think of enforcing. The wife might elect to consider him as a mere go-between, so far as the sheriff's sale was concerned, and she did so elect. Thereafter he was a trustee only in name, a pledgee without the pledge. From the time the goods came into her possession, the wife dealt with them as her own. In her last will and testament, while showing a desire and intention to pay, at least in part, her husband's debts, as she had in a manner promised to do, the tenor of the directions clearly indicate, that the payment was to be an act of grace and not of obligation. In disposing of her personal property she entirely disregards the surety's alleged contract rights.

Looking at the whole transaction, it is, after all, nothing but an attempt on the part of a married woman, her husband and the creditor of the latter to pledge the wife's goods, in her own hands, to secure the husband's old debts. The contract is, in effect, one of suretyship, and the act of June 8, 1893, P. L. 345, expressly provides that a married woman cannot make herself liable as a surety. Equity will not aid the appellant in his effort to make such an agreement fruitful: White's App., 36 Pa. 134; Baylor v. Com., 40 Pa. 37; Real Estate Co. v. Roop, 132 Pa. 496; Patrick & Co. v. Smith, 165 Pa. 526; Friend v. Lamb, 152 Pa. 529. In the case last cited the court say: "The very recent emancipation of married women from the disabilities formerly incident to their relation, does not remove them from consideration by the courts, when questions of improvidence, hardship and oppression in contracts made by them require judicial attention. In so far as these circumstances are recognized as occasions for intervention, they will be availed of in favor of married women as well as all other persons, with the added consideration of their less protected and, comparatively speaking, more helpless condition."

We are satisfied that the learned referee, and the court below, took the right view of the case, and decided it according to well established equitable principles.

The decree is affirmed and the appeal dismissed at the costs of the appellant.