## Estate of Hannah J. Heagy. Appeal of John Weigle, Martin Berkheimer and Peter Snyder.

*Wills—A legacy needs no consideration.*

A legacy needs no consideration to support it; it comes to its recipient through the mere grace of the giver.

*Will—Legacy—Invalid agreement may identify legatees.*

A married woman directed by her will that her property be sold and that the creditors of her husband as indicated by an invalid contract of suretyship executed by her in her lifetime be paid. *Held*, that the indicated creditors were entitled to participation in the distribution of her estate as beneficiaries under her will and that the invalid contract is only to be regarded as a means of identifying the objects of the testator's bounty and the extent thereof.

Argued March 11, 1897. Appeal, No. 29, March Term, 1897, by John Weigle, Martin Berkheimer, and Peter Snyder, from decree of O. C. Cumberland Co., sustaining exceptions to auditor's report in decreeing distribution. Before Rice, P. J., Willard, Wickham, Beaver, Reeder, Orlady and Smith, JJ. Reversed.

Exceptions to auditor's report.    Before E. W. BIDDLE, P. J.

It appeared from the evidence that Hannah J. Heagy died March 8, 1893, testate.   Shortly prior to the year 1892, John Weigle became surety for testatrix's husband on a number of notes aggregating $900.   Testatrix held a judgment against her husband for $1,162 upon which she issued execution.   On the same day she assigned $900 of her judgment to John Weigle. Subsequently she entered into an agreement of suretyship with the said John Weigle relative to the above debts of her husband. Upon this agreement suit was brought against her executor as .appears by the case of Weigle et al. v. Mercer, 1 Pa. Superior Ct. 490, where the agreement of suretyship is set out in full on page 493 ; also other facts connected with the history of the case.   In that case it was held that the contract or agreement was in effect one of suretyship and that equity will not lend its aid to an effort to make such an agreement fruitful.

In the present case the creditors of the husband claim as legatees under the provisions of the will of the said Hannah J. Heagy, as set out in the opinion of the Superior Court.

The auditor allowed these claims to share in the distribution. Exceptions were filed to this report on the part of H. H. Mercer, executor, and by E. G. Heagy, the husband.   These exceptions were sustained by the court.   Claimants appealed.

*Error assigned* was in sustaining the exceptions of the appellee to the report of the auditor.

*S. M. Leidich,* with him *H. S. Stuart* and *J. W. Wetzel,* for appellants.—There is a distinction between a devise to pay a debt as per an agreement extrinsic from the testamentary paper, and a direct bequest by the testamentary paper to pay in accordance with an agreement extrinsic and referred to in the testamentary paper.

In the latter case, to wit : when there is a direct bequest by a testamentary paper, whether the paper exists or not, or whether or not the testator is legally bound by the paper itself, yet, nevertheless the intention, as expressed by the will, being by implication a bequest in itself, always stands as the intention of the testator : 2 Jarman on Wills (5th Am. ed.), 104 ; Hunt v. Evans, 134 Ill. 496 ; Marsh v. Hague, 1 Ed. Ch. (N. Y.)

174.   And we are now considering the will under litigation apart from parol testimony, which is always admissible to support or rebut a legal implication or rebuttable legal presumption of this character.

It is apparent from the whole will that it was not the intention of the testatrix to engraft upon this plain gift, as was done by the court below in this case, the implication that a gift was intended only if there was a liability on the part of the testatrix by reason of her having entered into the agreement with Weigle.

Implication only arises when the expression used raises so strong a probability of the intention of the testator that an intention to the contrary cannot be supported : Matter v. Vowers, 113 N. Y. 569; Hunt v. Evans, 134 Ill. 496; Grout v. Hapgood, 30 Mass. 159.

While evidence cannot be resorted to, either to control or modify the intention of the testator, it may aid in ascertaining what the testator did intend : Gilmor's Est., 154 Pa. 523.

Necessary implication in constructing a will means so strong a probability of intention, that an intention contrary to that imputed cannot be supposed : 16 Am. & Eng. Ency. of Law, 373 ; Wilkinson v. Adam, 1 Ves. & B. 422, 466 ; Luce v. Harris, 79 Pa. 432; Bender v. Dietrick, 7 W. & S. 284.

Parol evidence is not admissible of the testator's intention in writing his will, but extrinsic evidence will be received of the circumstances attending its execution; Hawthorne's Estate, 11 Lan. 52; Vernor v. Henry, 3 Watts, 385 ; Brownfield v. Brownfield, 12 Pa. 136 ; s. c., 20 Pa. 55; Coleman v. Eberly, 76 Pa. 197.

*F. E. Beltzhoover*, for appellee.—A recital that a person is entitled under another instrument when he is not in fact entitled does not in general amount to a gift by the instrument which contains the recital : Harris v. Harris, 11 Ch. D. 663; Circuitt v. Perry, 23 B. 275.

A mere recital in a codicil of a supposed gift by will, will not amount to a gift : Arnold's Estate, 33 B. 163, 171.

An untrue recital in a will that testator has deeded certain property does not pass the title to such property : Streeter v. Evans, 134 Ill. 496. A very recent case holds that "where the testator gives his son all his personal property and recites

that he has also deeded him a farm, does not create an estate by implication in the farm where the deed is invalid : " Zimmerman v. Hafer (Md.), 32 Atl. Rep. 316.

A legacy cannot be properly implied in the present case in favor of persons to whom the testatrix was in no wise liable : Weigle v. Mercer, 1 Pa. Superior Ct. 490.

By the rule laid down in Wampole' Est., 3 Pa. Superior Ct. 414, the appellants' contention cannot be sustained.

OPINION BY WICKHAM, J., April 19, 1897 :

The clauses of Hannah J. Heagy's will, which are necessary to be considered in this case, are as follows :

" First, I direct that all my just debts and funeral expenses be paid by my executor hereinafter named as soon after my decease as conveniently can be done.

" Second, I direct that all my personal property shall be sold excepting household furniture and goods to be selected by my husband, should he survive me, to furnish a house for himself and children unmarried, one horse, one buggy, and one spring wagon, and the proceeds of said sale after the payment of the debts of my husband as agreed upon between myself and John Weigle, shall be invested by my Executor in real estate for a home for my husband and children."

The agreement to pay the husband's debts, referred to in the testamentary instrument, is in writing and bears date July 25, 1892. A copy thereof will be found printed in the reported statement of facts of this case. The will is dated October 8, 1892, and the testatrix died March 8, 1893. The purpose of the agreement was to save harmless John Weigle, who was surety for the husband of the testatrix on notes held by Martin Berkheimer and Peter Snyder, the other appellants. The facts, as to the identity of the agreement and the parties entitled thereunder, are undisputed, nor is there any question as to the amounts of the debts. It only remains, therefore, to ascertain from the will the intention of the testatrix when she directed by the clearest implication, that these debts should be paid. Did she mean what she said or something else ?

As to the agreement between Weigle and Mrs. Heagy, this court passed upon it in Weigle et al. v. Mercer, 1 Pa. Superior Ct. 490, and held that it being in effect a contract of suretyship,

it never bound her. It is clear, from the evidence in the present case, although the fact is not material, that she was aware of the invalidity of the agreement from the beginning. She used the property referred to therein as her own absolutely. The language of her will, explained by the surrounding circumstances, show that she intended this property to be sold for testamentary purposes, by her executor, after her death, and it is only fair to presume, that while she refused to abide by the terms of the written contract, she chose ex gratia, to make safe, after her death, her husband's creditors, to whom Weigle was bound; thus paying them and relieving him, and the husband.

The words " as agreed upon between John Weigle and myself," contained in the will, at first glance might indicate that the testatrix meant that the written agreement should be carried out strictly, according to its letter. This, however, would be obviously impossible, since she directs the property, constituting the subject-matter of the agreement, to be sold, and, moreover, the contract was of such a character that its provisions could not be literally complied with save during Mrs. Heagy's lifetime. Looking at the will, and the admissible facts necessary to a proper understanding of it, the conclusion is inevitable, that she intended her husband's creditors to be paid, in due course of the administration of her estate, out of the proceeds of the personal property directed to be sold, including that mentioned in the repudiated contract.

It is immaterial whether the agreement with Weigle was enforceable or not. The beneficiaries do not, in any sense, take under it, but under the will. The agreement is only looked to as a means of identifying the objects of the testatrix's bounty, and the extent thereof. If one, by his will, says " I direct that A shall receive my watch which I heretofore agreed with B I would present to A," the beneficiary claims and takes by virtue of the testamentary direction, and not under the unexecuted contract, which, being without consideration, would have no binding force. The fact that the testator in his lifetime, may have refused to be bound by the promise, as such, can have no effect in avoiding the disposition made by the will, which speaks as of the time of his death. A legacy needs no consideration to support it. It usually comes to its recipient through the mere grace of the giver.

Although Mrs. Heagy was not legally liable on her agreement, nevertheless she chose to recognize it as binding on her conscience. She knew, both before and after the making of the will, that the contract could not be enforced. If she intended that the persons to be benefited should receive nothing, unless they could comply with the impossible condition of establishing the validity of the agreement, we may safely assume that she would have said so. As it is, we have no right to add a condition to her gift, and are therefore compelled to decide that Berkheimer and Snyder are respectively entitled to their proper pro rata shares of the fund for distribution, as was held by the learned auditor. We may add here, that the husband of the testatrix, who is contesting the rights of these legatees, claims under the will and not against it.

The decree is reversed, and the record remitted to the court below, with directions to make distribution in conformity with the views herein expressed; the costs of the appeal to be paid out of the fund for distribution.